IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

ASHLEY MORELAND,                    )
                                    )
              Plaintiff,            )
                                    )
v.                                  )        Case No. CIV-08-208-KEW
                                    )
FRANCISCO EFRAIN BRAVO, M.D.,       )
                                    )
              Defendant.            )

## OPINION AND ORDER

This matter comes before the Court on Defendant's Motion for
Summary Judgment on Counts I & II, and Motion to Dismiss Counts
III, IV, and V (Docket Entry #56 and #57).  Plaintiff responded to
this combined Motion.  Upon review and consideration of the briefs
filed by the parties, this Court renders this ruling.

Plaintiff was employed by Tahlequah City Hospital ("TCH") as
a nurse.  Plaintiff alleges Dr. Bravo subjected her to various acts
of sexual harassment of which her employer was aware, resulting in
her termination.  By virtue of the subject Motion, the primary
question presented is whether Dr. Bravo acted as an employer or
agent of an employer such that this Court may exercise jurisdiction
over this action based upon Title VII.

At all times relevant to this action, Dr. Bravo's employment
relationship with TCH was defined by the document entitled
"Hospital and Physician Agreement" dated November 12, 2002.  The
Agreement states, in relevant part, under Section 4.01 of its
General Provisions as follows:

**Relationship.** It is mutually understood that no relationship exists between HOSPITAL and PHYSICIAN, such as, employer-employee, independent contractor, principal-agent, or partnership. Neither party shall have the authority to bind the other in any respect. HOSPITAL neither shall have nor shall exercise any control or direction over the methods by which PHYSICIAN shall perform general surgery services. . . . PHYSICIAN shall provide for himself and his employees any necessary worker's compensation, liability, unemployment compensation and other required insurance coverage. PHYSICIAN shall be solely responsible for payment of any federal, state, and local income taxes and self-employment (social security) taxes. Each party shall remain independent and responsible for its own actions.

Dr. Bravo's relationship to the staff at TCH was discussed by Plaintiff and other employees of TCH in their respective depositions. Plaintiff's supervisor, Connie Davis, vice-president for patient care at TCH, testified that doctors are generally in control of patient cases but the hospital is in control of its personnel. Doctors give directives concerning patient care. But, if a doctor has a problem with a nurse, he must come to either Ms. Davis or Brian Hale, assistant vice-president of emergency and surgical services at TCH. Ms. Davis was asked

Q: Can a doctor influence your decision or that of nursing supervisors concerning the retention, demotion, hiring of nursing personnel?

A: We give consideration to any concerns that are brought to our attention. We investigate, and we feel like if there's something that we find in that investigation that validates the doctor's concern, then, of course we would take the appropriate action on any personnel, based on that.

Mr. Hale testified doctors at TCH do not have any supervisory authority over hospital personnel, but are in control of the cases. Mr. Hale was asked the question of whether "[i]n the various medical care facilities where you have been employed, would it be a fair statement to say that a doctor can influence administrative personnel in whether or not to retain or terminate an employee?" to which he responded in the affirmative. He was also asked whether Dr. Bravo specifically had any influence, "either directly or indirectly, concerning [Plaintiff's] employment with Tahlequah City Hospital?" to which he responded in the negative.

Donna Dallis, vice-president of performance, improvement, and a risk manager for TCH, characterized doctors at the hospital as independent contractors. She stated doctors have no supervisory authority over employees at TCH. Plaintiff somewhat skews the deposition testimony in stating that Ms. Dallis referred to Dr. Bravo as an "employee." In fact, the witness stated "[a]nother thing that was requested in the subpoena was any – and I may not be wording this exactly right, but something that showed the procession of Dr. Bravo's employment." To say this statement designated Dr. Bravo as an "employee" is to ignore the context of the statement and the qualification placed upon it by the deponent.

Plaintiff testified her direct supervisor at TCH was Brian Hale. She stated Dr. Bravo did not hire her, fire her, demote her,

promote her, or discipline her during her employment with TCH.

Plaintiff also indicates additional evidence supports her contention Dr. Bravo acted as an agent or employee of TCH. She directs the Court to a letter dated December 15, 2006 from Dr. Bravo to TCH concerning an "incident" which occurred on December 8, 2007. He admits his conduct, which he states consisted of comments "of a sexual nature," could be construed as unprofessional and inappropriate in the work environment. He offers to rectify the situation, promises to take "extra precautions" in the future to avoid such inappropriate situations, and expresses a "desire that we continue our relationship."

Plaintiff also offers her own testimony wherein she states doctors gave her orders in her capacity as a nurse, such as directing that a patient's blood pressure be taken or to help patients in recovery after surgery. She testified the doctors in the department "were over me." She contends Dr. Bravo was her supervisor because "[t]he nurses and the nurse assistants are there to help the doctors."

TCH, through the nursing supervisor, Connie Davis, contends it terminated Plaintiff for taking three days off work to attend her sister's basketball tournament. Plaintiff was absent from her job for three consecutive shifts.

Under Rule 56(c) of the Federal Rules of Civil Procedure,

summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Universal Money Centers v. A.T. & T., 22 F.3d 1527, 1529 (10th Cir.), *cert. denied*, 513 U.S. 1052, 115 S.Ct. 655, 130 L.Ed.2d 558 (1994). The moving party bears the initial burden of showing that there is an absence of any issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553-54, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510-11, 91 L.Ed 2d 202 (1986). In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. Applied Genetics v. Fist Affiliated Securities, 912 F.2d 1238, 1241 (10th Cir. 1990); Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983).

With regard to the material facts set forth above, this Court finds no significant dispute. The sole legal issue, therefore, remaining is which party is entitled to summary judgment on the question of whether Dr. Bravo was Plaintiff's employer or agent of her employer.

Title VII prohibits an employer from discriminating against an employee on the basis of sex "with respect to [her] compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1). This prohibition proscribes sexual harassment in the workplace. Harrison v. Eddy Potash, Inc., 112 F.3d 1437, 1442 (10th Cir. 1997); Hirschfeld v. New Mexico Corrections Dept., 916 F.2d 572, 575 (10th Cir. 1990). Hostile work environment harassment occurs when unwelcome sexual conduct "unreasonably interfer[es] with an individual's work performance or creat[es] an intimidating, hostile, or offensive working environment.'" Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986) (quoting 29 C.F.R. § 1604.11(a)(3)).

However, the party against whom an employee proceeds under Title VII must necessarily be either an employer or agent of an employer such as a supervisor. Individual liability suits under Title VII are inappropriate. Lankford v. City of Hobart, 27 f.3d 477, 480 (10th Cir. 1994). An individual qualifies as an "employer" under Title VII for the purpose of imputing liability to

the true employer if he serves in a supervisory position and exercises significant control over the employee's hiring, firing, or conditions of employment. <u>Sauers v. Salt Lake Co.</u>, 1 F.3d 1122, 1125 (10th Cir. 1993).

The evidence does not indicate Dr. Bravo had any supervisory authority over Plaintiff's hiring, firing, or conditions of employment. Due to the unique mission of the hospital, a doctor necessarily directs the nursing staff in the performance of patient care, which is the mission of the hospital and the individual physicians. However, this direction in patient care provided by the doctors does not translate into a supervisory role over hospital personnel and their employment. While not necessarily indicative of his role at TCH, Dr. Bravo was clearly not employed as a supervisor as reflected in the Hospital and Physician Agreement. Moreover, Plaintiff's ultimate termination was not directed by Dr. Bravo nor is there any indication that he was consulted prior in the decision. Plaintiff has wholly failed to provide evidence Dr. Bravo acted as an employer or agent of an employer which is required for Title VII liability.

Plaintiff's constitutional claim is more problematic. In the original Complaint, Plaintiff included a section entitled "Count II – Deprivation of Constitutional Privileges, 42 U.S.C. § 1983." In that section, Plaintiff re-pleads the prior portions of the

Complaint "against Defendants THC (sic) and BRAVO." She then describes conduct alleged against TCH in failing to protect her from Dr. Bravo's conduct. She concludes in requesting judgment "against Defendant THC (sic)" for damages. Dr. Bravo filed an answer to the Complaint denying the allegations in this section.

Dr. Bravo then filed the subject Motion, requesting summary judgment on Count II. The basis for the request is "said Count is requesting judgment against Defendant, Tahlequah City Hospital only and not against this Defendant. Defendant Bravo is not an entity against whom such an action can be brought. The proper Defendant, Tahlequah City Hospital has already been dismissed from this suit, therefore Defendant Bravo requests this Count be dismissed."

Plaintiff's response includes a single comment regarding the Section 1983 claim. She states "[i]n addition, Defendant's MFSJ is limited to Plaintiff's Title VII claims and her state law claims. Defendant continues to ignore Plaintiff's Tit. 42 USC § 1983 claim."

After a pretrial conference in this case, the parties were directed to submit a proposed Pretrial Order. The proposed order submitted includes the federal claim based in Title VII as well a claim for "Deprivation of Civil Rights, in violation of Tit. 42 USC § 1981, 1985, *et seq.*" Plaintiff then refers to the same "factual basis" for the claim as for "Plaintiff's Sexual Harassment and

Retaliatory Discharge" claim.

This Court is truly perplexed. Plaintiff clearly included a § 1983 claim in the Complaint but appears to only seek relief from the dismissed Defendant TCH. Dr. Bravo was apparently confused by this same reference and makes only a cursory reference to the claim in his summary judgment motion but also adds the claim cannot be brought against Dr. Bravo without further legal development of the argument. Dr. Bravo also failed to file any reply to Plaintiff's response to the Motion which might have clarified his position. The constitutional claim then apparently went through some type of unexplained metamorphosis in the proposed Pretrial Order from a Section 1983 claim to one wholly different based in Section 1981 and 1985 - claims which require a racial discrimination component, a fact never asserted in this case. Dr. Bravo did not state a written objection to the altered nature of this claim in the proposed Pretrial Order.

This matter is ostensibly ready for trial. However, the confused status of the remaining federal claim creates several problems, including the effect its viability will have upon this Court's decision to exercise supplemental jurisdiction over the state law claims asserted by Plaintiff in this case, the real possibility Dr. Bravo did not include the constitutional claim in any discovery that might have been necessary if the claim had been

9

stated more clearly in the Complaint and had not been altered in the proposed Pretrial Order, and, most important to this Court, the ultimate outcome of any trial of this matter would be subject to question due to permitting the confused federal claim to be presented to the jury.

The Tenth Circuit Court of Appeals in similar circumstances has found the inclusion of a previously unstated claim in a pretrial order is the "equivalent of asking leave to amend" the complaint and must be evaluated under Fed. R. Civ. P. 15(a). <u>Minter v. Prime Equipment Co.</u>, 451 F.3d 1196, 1204 (10th Cir. 2006). Because the claims included in the Pretrial Order based in § 1981 and § 1985 potentially raise new and different factual and legal issues, the potential prejudice to Dr. Bravo is apparent. Rather than risk potential reversal on appellate review, this Court finds Plaintiff will be permitted to amend her claims against Dr. Bravo. However, in order to cure any potential prejudice, Dr. Bravo must be permitted additional time to conduct limited discovery on the new claims and file a dispositive motion, if it would be appropriate to do so. In the meantime, a ruling on the disposition of the state law claims will be delayed until the viability of the new federal claim is determined.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment on Counts I & II (Docket Entry #56) is hereby **GRANTED**, in

part, in that Plaintiff's Title VII claim is hereby **DISMISSED**. However, the Motion in regard to Plaintiff's constitutional claim is hereby **DENIED**, pending further discovery and clarification of the claim.

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss Counts III, IV, and V (Docket Entry #57) is hereby **DENIED**, at this time without prejudice to Dr. Bravo raising the same issue in a subsequent dispositive motion, should it be necessary.

IT IS FURTHER ORDERED that the jury trial of this case currently set to commence on August 31, 2009 is hereby **STRICKEN**. Instead, counsel shall appear for a further Status Conference on that date at 1:30 p.m. to discuss the need for amending the pleadings and for the entry of any additional scheduling orders.

IT IS SO ORDERED this 27th day of August, 2009.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE